## STAATS v. BYERS.

(Supreme Court, Appellate Division, First Department. January 10, 1902.)

1. WARRANTY—HORSES—SOUND, KIND, AND GENTLE—EVIDENCE.
    In an action for breach of a warranty that a team of horses was sound, kind, and gentle, evidence that on the day the horses were taken from the seller's stable one of them was nervous and restless, and reared in the shafts so as to nearly fall back on the driver; that the other chewed up his blanket; that they were not well broken, and would not stand quietly to allow persons to enter a carriage; that one of them would go in the opposite direction to that towards which his head was turned, would jump over puddles in the road, and that one horse was a "lugger" and the other "muly,"—was sufficient to support a verdict for plaintiff.

2. SAME—INSTRUCTION—ASSUMPTION OF FACTS.
    In an action for breach of a warranty that a team was sound, kind, and gentle, an instruction that plaintiff could not recover if the team was kind and gentle when defendant sold them, but became otherwise through the ignorance or inability of plaintiff's coachman, was properly refused where there was no evidence that the coachman was ignorant or unskillful.

    Hatch, J., dissenting.

Appeal from trial term, New York county.

Action by Robert F. Staats against Moses G. Byers. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

J. R. Fancher, for appellant.
C. DeH. Brower, for respondent.

PATTERSON, J. This action was brought to recover damages for the breach of a warranty given on the sale of horses by the defendant to the plaintiff. On the trial the plaintiff had a verdict, and from the judgment entered thereon, and from an order denying a motion for a new trial, the defendant appeals.

It appeared in evidence that on the 2d of January, 1897, the plaintiff purchased from the defendant a pair of cob horses, one brown and one black, and that he received a warranty in writing from the defendant in the following words: "Warranted sound, kind, and gentle on delivery." The record contains evidence of conversations had between the parties during the negotiations for the purchase of the horses, and from that evidence it appears that the plaintiff told the defendant that he wanted a pair of horses that a lady could drive, and that were safe for his wife and children to ride behind; that he wanted them for his place in the country,—a gentle team, that his wife could drive; that could be driven singly or double. The defendant's agent showed the plaintiff a pair of horses,—the same that were subsequently bought,—and said that they were gentle in every way; that they could be driven either double or single, and that a. lady could drive them without any trouble; and also that a warranty would be given at the time of sale. The horses were delivered to the plaintiff on the 2d of January, and were that day sent to a stable in the city of New York, and the next morning were taken to Long Branch by boat. They were driven from the stable in New York singly, the plaintiff being in a carriage drawn by one of the horses and the coachman of the plaintiff driving the other. On the way to the boat one of the horses reared in the shafts, and almost fell back on the plaintiff, swerving to the right, and overturning a street cleaner's cart. The horse was restless and nervous. While on the way down to the boat one of the horses chewed up his blanket. Arriving at Long Branch, it was put in a stable, and it tore down the manger. On the day following the arrival of the horses at Long Branch the plaintiff undertook to drive one of them to the railroad station, and the horse would not stand at the door, but would rear and plunge. At the station he reared, and came very near going into another vehicle with his forefeet. The plaintiff, in order to get into the carriage, would have to jump in as quickly as he could; the horse would stand only for a second. The other horse was not well broken. If his head was turned in one direction, he would go in another; he would not stand quietly; he would jump over puddles in the road. There was evidence to show that both horses were vicious and unruly, and not sound, kind, and gentle, within the terms of the written warranty; that one of them was a "lugger," and another "muly"; and the defects were manifested so soon after the purchase as to authorize the inference that they must have existed at the time the warranty was given. There was evidence on the part of the defendant tending to show that, although the horses were high-spirited, they were not vicious, nor unsafe, nor other than as warranted; but upon the whole case the jury were authorized to find that the warranty was broken.

We find no error in the record in the rulings of the court upon,

evidence nor in the charge to the jury. It is claimed, however, by the appellant, that he was entitled to an instruction which his counsel requested the court to give, but which was refused. That request is in the following words: "I ask your honor to charge the jury that if the horses were at the time of the delivery sound, kind, and gentle, then the warranty of the defendant was true. If, therefore, through the ignorance and inability of the witness Going, they were made unkind and unsafe for driving purposes, the defendant cannot be held liable, and the plaintiff cannot recover." The first branch of this request was proper, but it was associated with another proposition, and the request must be taken in its entirety. Going was the plaintiff's coachman. The defendant apparently claimed that the defects complained of in the horses were caused by the ignorance, unskillfulness, or maltreatment of Going; but there is no evidence in the record to show any act of Going that would have produced the vicious qualities complained of in the horses. The unskillfulness or ignorance sought to be imputed to Going rests merely in assumption. They are not to be inferred from the condition in which the horses were returned to the defendant. That condition may have resulted from proper efforts made to control them. Going had been a coachman for eight years, although he himself testified that he was not an expert with horses. These horses, however, were intended to be driven by a lady, and were not sold for the purposes of being handled only by experts. Specific acts indicating unskillfulness or ignorance or maltreatment were not shown, but, further than that, the second branch of the request refused by the court seems to contain the implication that Going was in fact ignorant, and unable to drive the horses properly, of which there is no proof.

We think, therefore, that it was not error to refuse to charge the whole of this request, and that the judgment and order appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and INGRAHAM, J., concur.

LAUGHLIN, J. I concur in the result. I am of opinion that it could not be said as matter of law that there was no evidence indicating negligence or ignorance on the part of the coachman, and that question, in the first instance at least, was one for the jury; but I think the request which was refused was likely to be understood by the jury as conveying the implication that the coachman was negligent, and therefore it was properly refused.

HATCH, J. I dissent upon the ground that the request to charge was proper, that there was evidence in the case bearing upon the question, and that it was error to refuse to charge as requested.